No. 23-10252

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

RHONDA FLEMING,

Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA, et al.,

Defendants

FCI TALLAHASSEE WARDEN,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Northern District of Florida

_____

**BRIEF FOR APPELLANT**

_____

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

JASON R. COODY
  *United States Attorney*

BARBARA L. HERWIG
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*

*Fleming v. FCI Tallassee Warden, No. 23-10252*

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for defendant-appellant

Warden Erica Strong certify that the following have an interest in the outcome of this

appeal:

Boynton, Brian M.*

Coody, Jason R.*

Drey, Kathryn Wilburn

Environmental Protection Agency

Federal Bureau of Prisons

Fleming, Rhonda

Frank, Michael J., U.S. Magistrate Judge

Herwig, Barbara L.

Moyle, Marie

Myron, Laura E.

Peters, Colette S.

Stafford, William, U.S. District Court Judge

Strong, Erica

United States of America

U.S. Attorney's Office for the Northern District of Florida

* Additions to previous certificate marked with an asterisk.

## STATEMENT REGARDING ORAL ARGUMENT

The government respectfully requests oral argument in this matter.

## TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUES.............................................................................1

STATEMENT OF THE CASE ................................................................................2

      A.    Statement of Facts ........................................................................2

      B.    Prior Proceedings..........................................................................3

      C.    Standard of Review ......................................................................4

SUMMARY OF ARGUMENT...............................................................................4

ARGUMENT ...........................................................................................................7

I.      The District Court Erred In Allowing Plaintiff's Eighth
      Amendment *Bivens* Claim To Proceed...........................................7

      A.    The Supreme Court's *Abbasi* and *Egbert* decisions
           reaffirm that the expansion of *Bivens* beyond the three
           cases identified by the Supreme Court is disfavored..................7

      B.    The District Court Improperly Recognized a Novel
           *Bivens* Remedy for an Eighth Amendment Claim for
           Exposure to Mold and Other Toxic Substances in
           Contravention of Supreme Court Precedent..............................11

           1.    Plaintiff's Conditions-of-Confinement Claim Arises in
                a New *Bivens* Context..........................................................13

           2.    Special Factors Preclude Recognizing Plaintiff's
                Proposed Eighth Amendment *Bivens* Claim
                Challenging Conditions-of-Confinement..........................15

II.     This Court Has Jurisdiction Over This Appeal Pursuant To
      The Collateral Order Doctrine .......................................................20

CONCLUSION ...................................................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS

**Cases:**                                                                                   <u>Page(s)</u>

*Alvarez v. U.S. Immigration & Customs Enf't,*
818 F.3d 1194 (11th Cir. 2016) ............................................................... 4

*Anderson v. Creighton,*
483 U.S. 635 (1987)............................................................................6

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011)..........................................................................30

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................. 7, 8, 12, 22

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971) ................................................................. 1, 2, 7

*Bush v. Lucas,*
462 U.S. 367 (1983)..........................................................................18

*Carlson v. Green,*
446 U.S. 14 (1980) ................................................................. 5, 7, 10, 13, 14

*Cheney v. U.S. Dist. Court for D.C.,*
542 U.S. 367 (2004)..........................................................................19

*Clinton v. Jones,*
520 U.S. 681 (1997)..........................................................................19

*Cohen v. Beneficial Indus. Loan Corp.,*
337 U.S. 541 (1949) ......................................................................20, 21, 24

*Conn v. Gabbert,*
526 U.S. 286 (1999) ......................................................................... 22

*\*Correctional Servs. Corp. v. Malesko,*
534 U.S. 61 (2001)......................................................................7, 8, 18, 19

*Davis v. Passman,*
442 U.S. 228 (1979) ......................................................................... 5, 7

*Digital Equip. Corp. v. Desktop Direct, Inc.,*
511 U.S. 863 (1994)......................................................................24, 28

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Egbert v. Boule,
   142 S. Ct. 1793 (2022) ......................................................... 1, 3, 4, 6, 10, 11, 12, 14, 15,
                                                                        16, 17, 18, 19, 19-20, 23, 24, 25

*Graber v. Doe,
   59 F.4th 603 (3d Cir. 2023) .............................. 21, 22, 23, 24, 24-25, 26, 27, 28, 29, 30

*Hernandez v. Mesa:
   137 S. Ct. 2003 (2017) .............................................................................. 12, 21
   885 F.3d 811 (5th Cir. 2018) ........................................................................19-20
   140 S. Ct. 735 (2020) ............................................................................ 12, 15, 25

Himmelreich v. Federal BOP,
   5 F.4th 653 (6th Cir. 2021) ............................................ 25-26, 26, 27, 29

J.I. Case Co. v. Borak,
   377 U.S. 426 (1964) .............................................................................................. 8

Mack v. Yost,
   968 F.3d 311 (3d Cir. 2020) ................................................................................ 12

Mitchell v. Forsyth,
   472 U.S. 511 (1985) ...................................................................................... 21, 24

Mohawk Indus., Inc. v. Carpenter,
   558 U.S. 100 (2009) ............................................................................................ 20

Nixon v. Fitzgerald,
   457 U.S. 731 (1982) ............................................................................................ 25

Pearson v. Callahan,
   555 U.S. 223 (2009) ............................................................................................ 22

Powell v. Lennon,
   914 F.2d 1459 (11th Cir. 1990) ............................................................... 4, 5, 11

Sell v. United States,
   539 U.S. 166 (2003)............................................................................................28

Shoop v. Twyford,
   142 S. Ct. 2037 (2022) ....................................................................................... 29

Swint v. Chambers Cty. Comm'n,
   514 U.S. 35 (1995) ................................................................................ 20, 21, 25

*Swint v. City of Wadley,*
   5 F.3d 1435 (11th Cir. 1993) ........................................................25

*Tate v. Harmon,*
   54 F.4th 839 (4th Cir. 2022) ....................................................... 14

*United States v. Stanley,*
   483 U.S. 669 (1987) .................................................................... 26

*Wilkie v. Robbins,*
   551 U.S. 537 (2007) .................................................................... 25

*Will v. Hallock,*
   546 U.S. 345 (2006) .............................................. 22, 23, 27, 28, 28-29, 30

*Wood v. Moss,*
   572 U.S. 744 (2014) .................................................................... 30

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017) ......................................... 1, 4, 7, 8, 9, 10, 11, 12, 14,
                                                      15, 16, 17, 18, 19, 22, 23, 25, 26

**Statutes:**

Civil Rights of Institutionalized Persons Act (CRIPA),
   Pub. L. No. 96-247, § 3, 94 Stat. 349 (1980) ................................17
      42 U.S.C. § 1997e ................................................................ 17

Federal Tort Claims Act (FTCA):
   28 U.S.C. § 2671 ....................................................................... 2

28 U.S.C. § 1291 ............................................................... 1, 20

28 U.S.C. § 1331 ............................................................... 1

42 U.S.C. § 1983 ................................................................ 17

**Regulations:**

28 C.F.R. § 542.10 .................................................................. 16

28 C.F.R. § 542.15 .................................................................. 16

28 C.F.R. § 542.16 ................................................................................................ 16

28 C.F.R. § 542.18 ................................................................................................ 16

**Rule:**

Fed. R. App. P. 4 ...................................................................................................1

## STATEMENT OF JURISDICTION

In this *Bivens* action, plaintiff invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1331.[1] On November 21, 2022, the district court rejected the magistrate judge's recommendation to dismiss plaintiff's Eighth Amendment conditions-of-confinement claim based on *Egbert v. Boule*, 142 S. Ct. 1793 (2022). Defendant Strong filed a timely notice of appeal from the district court order on January 19, 2023. *See* Fed. R. App. P. 4. As explained *infra*, pp. 20-30, this Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether, in light of the Supreme Court's decisions in *Egbert* and *Ziglar v. Abbasi*, 582 U.S. 120 (2017), plaintiff's Eighth Amendment conditions-of-confinement claim should be dismissed because special factors counsel against recognizing *Bivens* remedies in the context presented by this case.

2. Whether this Court has jurisdiction to review the district court's refusal to dismiss the claim here on special-factors grounds under the collateral order doctrine because the availability of a *Bivens* remedy in the context of this case turns on fundamental separation-of-powers concerns.

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

## STATEMENT OF THE CASE

### A.     Statement of Facts

Plaintiff Rhonda Fleming is a federal inmate, previously housed at the Federal

Correctional Institution Tallahassee (FCIT). In October 2018, while housed at FCIT,

she was assigned to the B-North housing unit. A61.

The present appeal arises from plaintiff's suit against the United States alleging

claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, and, as relevant

here, against FCIT Warden Erica Strong, alleging First and Eighth Amendment claims

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971). A40-A43. Plaintiff alleged that during her tenure at FCIT she was exposed

to "'[t]oxic mold' and other unidentified 'toxins'"; "that asbestos also was present";

and "that the roof leaked," contributing to mold and mildew in the facility. A62

(alteration in original) (quoting A35 at ¶¶ 2, 4). Plaintiff claimed that she "suffer[ed]

from 'daily headaches,' 'hair loss,' 'extreme sudden weight gain,' and 'memory loss'",

and that "the 'COVID-19 virus is worsened by exposure to mold.'" *Id.* (quoting A35

at ¶¶ 5, 6). Plaintiff alleged that these conditions were "visible" to Warden Erica

Strong, A42 at ¶ 43, and that she "personally spoke with [d]efendant Warden and

emailed her on numerous occasions regarding the . . . leaking roof, leaking ceiling,

sleeping under trash bags, and the mold, among [other] matters," A43 at ¶ 46 .

She further alleged that sleeping conditions "prevented [her] from socially

distancing during the COVID-19 pandemic." A62 (citing A36-A37at ¶¶ 11, 19); *see*

2

*also* A36 (explaining that plaintiff has contracted COVID-19 twice). These circumstances, according to the complaint, constituted unconstitutional conditions of confinement in violation of the Eighth Amendment. A42 at ¶ 42. Plaintiff further alleged that Warden Strong knew about the alleged conditions and "refused to remove the [p]laintiff from these unconstitutional conditions, over the recommendations of Health Services and two case managers, in retaliation for filing grievances and tort claims." A43 at ¶ 48.[2]

**B.    Prior Proceedings**

The government moved to dismiss on behalf of the United States and Warden Strong, arguing, *inter alia*, that plaintiff could not state a viable cause of action under *Bivens*. The magistrate judge, relying heavily on *Egbert v. Boule*, 142 S. Ct. 1793 (2022), recommended dismissal of the *Bivens* claims on the ground (1) that both the First and Eighth Amendment claims presented a new *Bivens* context; and (2) that for both claims, special factors counseled against recognizing *Bivens* in this context. *See* A80-A84. Specifically, the judge identified "the availability of alternate remedies for prisoners" and "separation-of-powers concerns" as such factors for plaintiff's claims.

---

[2] As relevant to her FTCA claims, she also alleged that on October 29, 2019, another inmate assaulted her, causing injuries to her head, neck, and wrist. A63. She alleged that the assault occurred because the "housing unit officer failed to secure the door, the gate leading to the Education Building was not locked, and the Education Building was not locked/secured" allowing the inmate to re-enter a building she should not have had access to. A37 at ¶ 22.

3

A83-A84. The district court adopted in part, and rejected in part, the magistrate judge's recommendation. *See* A91. As relevant here, the court dismissed plaintiff's First Amendment *Bivens* claims but held that her Eighth Amendment claim based on exposure to mold and other toxic substances could go forward. *Id.* In doing so, the court relied on *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990), in which the Eleventh Circuit "held that a prisoner who alleged exposure to asbestos in the dormitory adequately stated an Eighth Amendment claim under *Bivens*." A87-A88. The district court did not consider whether the conditions-of-confinement claim arose in a new context, whether the special factors relied upon by the magistrate judge counseled against the availability of a *Bivens* remedy, nor did it specifically address whether *Powell* remains good law following *Egbert*.

## C.    Standard of Review

This Court reviews the question whether a complaint identifies a cognizable *Bivens* claim de novo. *See Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1200 (11th Cir. 2016).

## SUMMARY OF ARGUMENT

1. The district court should have dismissed plaintiff's Eighth Amendment conditions-of-confinement claim based on recent Supreme Court decisions reaffirming that the expansion of *Bivens* is disfavored. *See Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Egbert v. Boule*, 142 S. Ct. 1793 (2022). *Abbasi* and *Egbert* show that plaintiff's

Eighth Amendment claim involves a new *Bivens* context and that multiple special factors counsel against recognizing that claim.

The district court failed to discuss a special-factors analysis or to assess whether the claim arises in a new context. Rather, the court refused to dismiss the claim based on *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990), in which this Court held that a conditions-of-confinement claim based on a warden's refusal to move an inmate to an asbestos-free environment was subject to liability under *Bivens*. But since *Powell* was decided, the Supreme Court has made clear that a court must engage in the special-factors inquiry except in the three "instances in which the Court has approved of an implied damages remedy" for constitutional violations—*Bivens*, *Davis v. Passman*, 442 U.S. 228 (1979) (finding an implied damages remedy for an equal-protection violation involving discrimination in congressional-staff employment), and *Carlson v. Green*, 446 U.S. 14 (1980) (finding implied damages remedy for Eighth Amendment violation involving the failure to treat an inmate's asthma, resulting in his death).

Conditions-of-confinement claims like plaintiff's, which concerns exposure within the prison to mold and other toxic substances, are governed by different and more indeterminate standards than a specific medical-treatment claim and present a far more wide-ranging risk to the proper operation of prisons than a medical-treatment claim. The existence of legislative and administrative remedies provide a sufficient reason to conclude that Congress would not have approved of a *Bivens* remedy for an Eighth Amendment conditions-of-confinement claim like that at issue

here. And—as the magistrate judge correctly identified—separation-of-powers

concerns provide an independent reason to counsel hesitation before recognizing an

implied remedy for damages based on the plaintiff's allegations.

2. This Court has jurisdiction under the collateral order doctrine because the

district court's order extending *Bivens* to a new context is conclusive, resolves

important issues separate from the merits, and would be effectively unreviewable on

appeal from a final judgment. "Recognizing a *Bivens* cause of action is an extraordinary

act that places great stress on the separation of powers," *Egbert*, 142 S. Ct. at 1806 n.3

(quotation marks omitted), and is separate from the merits. Similar to interlocutory

orders denying qualified immunity (which are immediately appealable), interlocutory

orders extending *Bivens* remedies to new contexts also entail "substantial social costs,"

including "the risk that fear of personal monetary liability and harassing litigation will

unduly inhibit officials in the discharge of their duties." *Id.* at 1807 (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 638 (1987)). Those harms are not cured by a final judgment

in a *Bivens* defendant's favor.

# ARGUMENT

## I.  The District Court Erred In Allowing Plaintiff's Eighth Amendment *Bivens* Claim To Proceed.

### A.  The Supreme Court's *Abbasi* and *Egbert* decisions reaffirm that the expansion of *Bivens* beyond the three cases identified by the Supreme Court is disfavored.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). *Bivens* held that, despite the absence of a statutory cause of action, law-enforcement officials acting under color of federal law could be sued for money damages for using excessive force in conducting a warrantless search and arrest in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 389. The Court has approved an implied damages remedy under the Constitution only two other times, in *Davis v. Passman*, 442 U.S. 228 (1979), for an equal-protection violation involving discrimination in congressional-staff employment, and in *Carlson v. Green*, 446 U.S. 14 (1980), for an Eighth Amendment violation involving the failure to treat an inmate's asthma, resulting in his death.

The Supreme Court's recent decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), makes clear that the continued expansion of *Bivens* to "any new context or new category of defendants" beyond the three specific contexts at issue in *Bivens*, *Davis*,

7

and *Carlson* is a "disfavored judicial activity." *Id.* at 135 (quoting *Malesko*, 534 U.S. at 68; and then quoting *Iqbal*, 556 U.S. at 675). *Bivens*, *Davis*, and *Carlson* were decided at a time when, "as a routine matter," the Supreme Court "would imply causes of action not explicit in [a] statut[e's] text" on the assumption that courts could properly "provide such remedies as [we]re necessary to make effective" the statute's purpose. *Id.* at 132 (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). In that era, the Court's approach to the creation of such actions under the Constitution was correspondingly lax.

The Supreme Court has since rejected that approach, explaining that "a private cause of action will not be created through judicial mandate." *Abbasi*, 582 U.S. at 133. This "caution as to implied causes of actions under congressional statutes led to similar caution with respect to actions in the *Bivens* context." *Id.* As a result, for nearly four decades now, the Supreme Court has "consistently refused to extend *Bivens* liability" to any new contexts, including those involving prisoner detention, beyond the three specific contexts at issue in *Bivens*, *Davis*, and *Carlson*. *Malesko*, 534 U.S. at 68; *see Abbasi*, 582 U.S. at 135 (listing cases). Moreover, the Court has noted that "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Abbasi*, 582 U.S. at 134.

The Supreme Court's reluctance to extend *Bivens* is rooted in constitutional concerns. "[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a

8

cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi*, 582 U.S. at 133. Authorizing a cause of action for damages against federal officials in their individual capacities would "create substantial costs" directly for the government and would also impose significant "time and administrative costs attendant upon intrusions resulting from the discovery and trial process." *Id.* at 134. Congress is "better position[ed]" than the judiciary "to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 136 (quotation marks omitted). The decision to create such claims thus should "be committed to those who write the laws rather than those who interpret them." *Id.* at 135-36 (quotation marks omitted).

To protect the separation of powers from continued encroachment, *Abbasi* set forth stringent criteria for analyzing whether a court may recognize a *Bivens* remedy. At the threshold, a court must determine if the asserted claim arises in a new context—that is, if it differs "in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court." *Abbasi*, 582 U.S. at 139. The Court identified "*Bivens, Davis, and Carlson*" as "the only instances in which the Court has approved of an implied damages remedy" for constitutional violations. *Id.* at 131. Measured against those three cases, a claim may present a new *Bivens* context based on distinctions including but not limited to "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the

statutory or other legal mandate under which the officer was operating; the risk of

disruptive intrusion by the Judiciary into the functioning of other branches; or the

presence of potential special factors that previous *Bivens* cases did not consider,"

among other reasons. *Id.* at 140. Even small differences constitute a new context, as

"a modest extension is still an extension." *Id.* at 147.

   If the asserted cause of action arises in a new context, courts must then ask

whether "special factors" counsel against inferring such an action absent "affirmative

action by Congress." *Abbasi*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). This

"inquiry must concentrate on whether the Judiciary is well suited, absent

congressional action or instruction, to consider and weigh the costs and benefits of

allowing a damages action to proceed." *Id.* "[T]o be a 'special factor,'" a circumstance

need only "cause a court to hesitate before answering that question in the

affirmative." *Id.* A *Bivens* remedy should not be inferred if "there [is even one] sound

reason[] to think Congress *might* doubt the efficacy or necessity of a damages remedy

as part of the system for enforcing the law and correcting a wrong." *Id.* at 137

(emphasis added). Relatedly, "if there is an alternative remedial structure present in a

certain case," the existence of that existing process "alone may limit the power of the

Judiciary to infer a new *Bivens* cause of action." *Id.*

   The Supreme Court reaffirmed and further clarified the above principles in

*Egbert v. Boule*, 142 S. Ct. 1793 (2022). *Egbert* declined to recognize a *Bivens* remedy for

a Fourth Amendment excessive-force claim against a Border Patrol agent who entered

the plaintiff's property without a warrant to investigate an individual suspected of illegally entering or exiting the United States. *Egbert* clarified that *Bivens* "does not invite federal courts to independently assess the costs and benefits of implying a cause of action." *Id.* at 1805. Instead, the Supreme Court explained, a court "faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136).

**B.    The District Court Improperly Recognized a Novel *Bivens* Remedy for an Eighth Amendment Claim for Exposure to Mold and Other Toxic Substances in Contravention of Supreme Court Precedent.**

The district court here erred when, without conducting a special-factors analysis, it rejected the recommendation that plaintiff's Eighth Amendment claim related to exposure to mold and other toxic substances should be dismissed. Instead of considering the question required by the Supreme Court in *Abbasi* and *Egbert*, the court found that plaintiff's claim could proceed, relying on *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990), with no additional analysis. In *Powell*, this Court held that a plaintiff stated an Eighth Amendment conditions-of-confinement *Bivens* claim on the ground that "refus[ing] to move the plaintiff to an asbestos-free environment. . . . constitute[d] deliberate indifference to the plaintiff's serious medical needs." *Id.* at 1463. Since *Powell* was decided, the Supreme Court has made clear—as outlined above—that "*Bivens, Davis,* and *Carlson*" are "the only instances in which the Court has

11

approved of an implied damages remedy" for constitutional violations. *Abbasi*, 582

U.S. at 131; *see also Egbert*, 142 S. Ct. at 1803 (explaining that recognizing a *Bivens*

remedy is a "disfavored" judicial activity, and setting stringent criteria under which a

court may extend *Bivens* to a new claim (quoting *Abbasi*, 582 U.S. at 135)); *see also*

*Hernandez v. Mesa* (*Hernandez II*), 140 S. Ct. 735, 742 (2020) (quoting *Abbasi*, 582 U.S.

at 135, and *Iqbal*, 556 U.S. at 675).

As *Powell* predated *Egbert*, *Hernandez II*, and *Abbasi*, it can no longer be

considered good law to assume the availability of a cause of action under *Bivens*

without consideration of whether there is a new context and whether special factors

counsel hesitation by the judiciary. *See, e.g.*, *Hernandez v. Mesa* (*Hernandez I*), 137 S. Ct.

2003, 2006-07 (2017) (remanding for the court of appeals to consider how *Abbasi*

affects the availability of a *Bivens* remedy); *see also, e.g.*, *Mack v. Yost*, 968 F.3d 311, 319

(3d Cir. 2020) ("But since the Supreme Court's decision in *Abbasi*, our prior decisions

permitting a *Bivens* action for First Amendment claims are clearly called into question

and are no longer controlling."). The Supreme Court's decision in *Egbert* makes

clear—as the magistrate judge correctly recognized in this case—that the court was

obligated to engage in the special factors analysis. The district court failed to do so,

and it erred in rejecting the magistrate judge's conclusion that plaintiff's claim presents

a new context and that special factors counsel against allowing the claim to proceed.

12

### 1. Plaintiff's Conditions-of-Confinement Claim Arises in a New *Bivens* Context.

Plaintiff's claim plainly arises in a new context from any of the three Supreme Court cases where a damages remedy was recognized. Plaintiff alleged that during her tenure at FCIT she was exposed to "'[t]oxic mold' and other unidentified 'toxins;'" "that asbestos also was present;" and "that the roof leaked," contributing to mold and mildew in the facility. A62 (alteration in original) (quoting A35 at ¶¶ 2, 4). Plaintiff alleged that these conditions were "visible" to Warden Erica Strong, A42, and that she "personally spoke with Defendant Warden and emailed her on numerous occasions regarding . . . the leaking roof, leaking ceiling, sleeping under trash bags, and the mold, among [other] matters," A43. And she claimed that she "suffer[ed] from 'daily headaches,' 'hair loss,' 'extreme sudden weight gain,' and 'memory loss,'" and that "'the COVID-19 virus is worsened by exposure to mold." A62 (quoting A35).

The magistrate judge correctly recognized that these claims arise in a new context from any of the three cases in which the Court previously recognized a *Bivens* remedy, including *Carlson. See* A81-82 (citing *Carlson*, 446 U.S. at 16 n.1). In *Carlson*, the plaintiff's estate had alleged that the prison officials, "failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing," and "delayed for too long a time his transfer to an outside hospital," resulting in his death.

13

*Carlson*, 446 U.S. at 16 n.1. As the Supreme Court has noted, even small differences from prior cases constitute a new context, as "a modest extension is still an extension." *Abbasi*, 582 U.S. at 147; *see also id.* at 140 (providing examples of small differences that provide the basis for concluding a case presents a new context). As the magistrate judge recognized, "[t]he bases of [plaintiff's] claim are markedly different than the bases in *Carlson*" because the conditions-of-confinement claim here "relates to the alleged facility conditions and 'overcrowding' at FCIT" rather than the prison's response to a specific and severe medical incident. A82.

In a similar case, the Fourth Circuit recently recognized that a claim "premised on conditions in the Special Housing Unit" at a federal prison presented a new context from *Carlson. See Tate v. Harmon*, 54 F.4th 839, 845 (4th Cir. 2022) (alteration and quotation marks omitted). As the Fourth Circuit explained, "[t]he Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Id.* at 846 (quoting *Egbert*, 142 S. Ct. at 1805). That court reasoned that because the plaintiff's conditions-of-confinement claim was a "systemic claim based on a collection of prison conditions," *id.* at 847, including that "the cells were unsanitary, cold, and contained uncomfortable mattresses, and that he was denied recreation time and given inadequate [hygiene supplies]," *id.* at 846 (quotation marks omitted), it was sufficiently different from the context in *Carlson*. So too here is plaintiff's claim, which concerns exposure to mold and other toxic

14

substances and the inability to socially distance during the COVID-19 pandemic, sufficiently distinct from *Carlson*, and thus, should be considered as arising in a new context.

It is true that plaintiff's claims—like those at issue in *Carlson*—arise under the Eighth Amendment, but the Court has expressly held that claims arising under the same constitutional amendment may still arise in a new context. *See Hernandez II*, 140 S. Ct. at 743 (noting that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized"). Indeed, *Egbert* itself, which concerned a Fourth Amendment claim similar to that at issue in *Bivens* but in the immigration context, demonstrates that even "parallel circumstances" cannot "justify a *Bivens* extension" unless a plaintiff can also show that special factors do not counsel against hesitation. 142 S. Ct. at 1809 (quoting *Abbasi*, 582 U.S. at 139). Similarly, in *Abbasi*, the Supreme Court concluded that a case arose in a new context despite "significant parallels to [*Carlson*]," explaining that "even a modest extension is still an extension." 582 U.S. at 147.

### 2. Special Factors Preclude Recognizing Plaintiff's Proposed Eighth Amendment *Bivens* Claim Challenging Conditions-of-Confinement.

The magistrate judge correctly recognized that there is at least one "rational reason . . . to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (emphasis omitted) (quoting *Abbasi*, 582 U.S. at 136); *see also* A83-A84. At least two special factors counsel

15

against allowing plaintiff's *Bivens* claim to proceed: the availability of alternate processes and significant separation-of-powers concerns.

A. To begin, the availability of alternate processes, including the Bureau of Prison (BOP)'s administrative remedy program, which is a formal three-level grievance process, including two levels of administrative appeals, *see* 28 C.F.R. §§ 542.10, .15, .16, .18, provides a sufficient reason to conclude that Congress would not have approved of a *Bivens* remedy for an Eighth Amendment conditions-of-confinement claim like that at issue here, *see* A83-A84 (citing cases for the proposition that BOP's administrative remedy program counsels against creation of a damages remedy). As the Supreme Court explained in *Egbert*, recognizing a new *Bivens* remedy is inappropriate where "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence." 142 S. Ct. at 1807.

In addition to administrative remedies, legislative action, where it "suggest[s] that Congress does not want a damages remedy[,] is itself a factor counseling hesitation." *Abbasi*, 582 U.S. at 148. The existence of legislative remedies itself demonstrates that Congress is better suited to determining whether a damages remedy should lie in circumstances like those presented here. For example, to the extent sovereign immunity is waived and the relevant exhaustion requirements are met, a plaintiff may have claims under the Federal Tort Claims Act. Indeed, plaintiff here brought a claim under that statute and the district court has allowed the claim to proceed to summary judgment. *See* A90-A91.

16

Moreover—as the Supreme Court recognized in *Abbasi* when considering a claim similar to that at issue in *Carlson*—"[s]ome 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995 [(PLRA)], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." 582 U.S. at 148 (citing 42 U.S.C. § 1997e). As the Supreme Court explained, the PLRA makes "clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* The presence of legislative action confirms that a court should not extend *Bivens* to plaintiff's claims. *See Egbert*, 142 S. Ct. at 1807; *see also* Civil Rights of Institutionalized Persons Act (CRIPA), Pub. L. No. 96-247, § 3, 94 Stat. 349 (1980) (authorizing Attorney General to institute civil action for "equitable relief" against state officials for unconstitutional behavior, but providing no cause of action for federal inmates). This is particularly true given that Congress long ago created a cause of action for damages against state officials for constitutional violations, *see* 42 U.S.C. § 1983, but has never created a parallel action against federal officials generally or BOP officials specifically. Congressional activity relating to federal prisoner issues demonstrates that this omission "might be more than mere oversight." *Abbasi*, 582 U.S. at 143.

An alternative process need not provide money damages to preclude a *Bivens* remedy, as *Egbert* explicitly noted with respect to BOP's administrative grievance process. *See* 142 S. Ct. at 1806 ("In *Malesko*, we explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances

17

through an "'Administrative Remedy Program.'" (citing *Malesko*, 534 U.S. at 74)). The availability of alternatives like BOP's program provides a "rational reason" "to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (emphasis omitted) (quoting *Abbasi*, 582 U.S. at 136). "That is true even if a court independently concludes that [such] procedures are 'not as effective as an individual damages remedy.'" *Id.* at 1807 (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)). Indeed, the PLRA thus suggests that Congress "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 582 U.S. at 149.

B. In addition, the magistrate judge correctly identified separation-of-powers concerns as providing an independent reason to think a *Bivens* remedy should not be available to address plaintiff's claims. *See* A82. "Recognizing a *Bivens* remedy for [plaintiff's] conditions-of-confinement claim would threaten 'disruptive intrusion by the Judiciary into the functioning of the other branches'" because "courts would be tasked with instructing the Executive Branch as [to] how to best maintain prison facilities and prisoner population." *Id.* (quoting *Abbasi*, 582 U.S. at 140). This is particularly true here given that plaintiff's claim challenges the prison's response to a complaint about facility conditions. Individual damages remedies are "not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 582 U.S. at 140 (quoting *Malesko*, 534 U.S. at 74). Even "if the action is confined to the conduct of a particular Executive Officer in a discrete instance," claims like those at issue here "call into question the

18

formulation and implementation of a general policy"—here, the prison's policies for mold abatement and facility maintenance as well as housing decisions related to the COVID-19 pandemic. *Id.* at 141. Such policy considerations involve resource allocation questions, which are especially difficult in the face of a national health emergency. Consideration of an individual damages remedy "would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Id.* As the Supreme Court explained "[t]hese consequences counsel against allowing a *Bivens* action against the Executive Officials, for the burden and demand of litigation might well prevent them . . . from devoting the time and effort required for the proper discharge of their duties." *Id.* (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 382 (2004)).

Thus, "[a]llowing a damages suit in this context . . . would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch." *Abbasi*, 582 U.S. at 141 (quoting *Clinton v. Jones*, 520 U.S. 681, 701 (1997), for the proposition that the "separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties"). *Egbert* emphasized that "[e]ven in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." 142 S. Ct. at 1803-04 (quoting *Abbasi*, 582 U.S. at 136). "That uncertainty alone," *Egbert* noted, "is a special factor that forecloses relief." *Id.* at 1804 (citing *Hernandez v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) (en banc) (holding that "[t]he newness of this 'new context' should

19

alone require dismissal")). As explained, recognizing a *Bivens* Eighth Amendment conditions-of-confinement claim for exposure to mold and other toxic substances is likely to have adverse systemwide consequences for federal penal institutions. Thus, special factors also preclude recognizing plaintiff's *Bivens* claim for this additional reason.

## II. This Court Has Jurisdiction Over This Appeal Pursuant To The Collateral Order Doctrine.

A. Pursuant to 28 U.S.C. § 1291, courts of appeals have jurisdiction over "appeals from all final decisions of the district courts of the United States[] . . . except where a direct review may be had in the Supreme Court." Section 1291 "encompasses not only judgments that 'terminate an action,' but also a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949)). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995). The district court's ruling extending *Bivens* to plaintiff's claim satisfies all three *Cohen* requirements and is immediately appealable as a collateral order.

1. The order satisfies the first *Cohen* factor because if this Court were to agree with defendant that special factors preclude recognizing a *Bivens* remedy with respect to

plaintiff's claim, there would be nothing to do but dismiss the Eighth Amendment conditions-of-confinement claim. *See Graber v. Doe*, 59 F.4th 603, 617 (3d Cir. 2023) (Hardiman, J., dissenting). In that respect, those orders are in no way "tentative, informal[,] or incomplete." *Swint*, 514 U.S. at 42 (quoting *Cohen*, 337 U.S. at 546).

2. The order satisfies the second *Cohen* factor because defendant's argument that a *Bivens* remedy should not be recognized for an Eighth Amendment conditions-of-confinement claim is separate from the merits of that claim. Whether a court should recognize a *Bivens* remedy turns, as explained, on (1) whether the context differs from the three contexts in which the Supreme Court has recognized *Bivens* claims, and (2) whether special factors preclude courts from creating a new individual-damages remedy in that context.

Those considerations are legally distinct—and thus *separate*—from the merits of plaintiff's Eighth Amendment conditions-of-confinement claim at issue here. *See Graber*, 59 F.4th at 616 (Hardiman, J., dissenting); *see also Hernandez I*, 137 S. Ct. at 2007 (explaining that resolving the question of the availability of a *Bivens* remedy may render it "unnecessary" for the Court to consider the constitutional question). Indeed, the special-factors inquiry is more separate from the merits of a *Bivens* constitutional claim than a denial of qualified immunity, which is subject to collateral-order review under *Mitchell v. Forsyth*, 472 U.S. 511, 526-28 (1985). Unlike the special-factors inquiry, qualified immunity can and often does overlap significantly with the merits of a *Bivens* constitutional claim. An immunity appeal, for example, may focus on

21

"whether the plaintiff has alleged the deprivation of a[] . . . constitutional right *at all*,"
*Conn v. Gabbert*, 526 U.S. 286, 290 (1999) (emphasis added); *see Pearson* v. *Callahan*, 555
U.S. 223, 232 (2009) (describing this as the "first step" of the qualified immunity
analysis), which goes directly to the merits of, or the elements underlying, the
constitutional-tort claim. Moreover, even if an immunity appeal focuses on whether
the plaintiff has identified a violation of "clearly established law" (the second prong of
the qualified immunity analysis), the appeal may still overlap with the merits because
"whether a particular complaint sufficiently alleges a clearly established violation of
law cannot be decided in isolation from the facts pleaded." *Iqbal*, 556 U.S. at 673.
These points all confirm that an interlocutory appeal challenging a *Bivens* extension is
even more separate from the merits than an immunity appeal, which as noted qualifies
for immediate appeal under the collateral order doctrine. *See Graber*, 59 F.4th at 617
(Hardiman, J., dissenting).

Regarding importance, whether a *Bivens* remedy should be recognized qualifies
because that question raises fundamental separation-of-powers concerns. *See Will v.
Hallock,* 546 U.S. 345, 352-53 (2006) (noting that the separation of powers is a "value
of a high order" that provides an "interest in avoiding trial"). As the Supreme Court
emphasized in *Abbasi*, "[w]hen a party seeks to assert an implied cause of action under
the Constitution itself, . . . separation-of-powers principles are or should be central to
the analysis." 582 U.S. at 135; *see also id.* at 133 (noting that "it is a significant step
under separation-of-powers principles for a court to determine that it has the

authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation").

*Egbert* reiterated this key point, noting that "[a]t bottom, creating a cause of action is a legislative endeavor," 142 S. Ct. at 1802, and that Congress is "'far more competent than the Judiciary' to weigh" the "policy considerations" relevant to creating a cause of action, *id.* at 1803; *see also id.* at 1802 (noting that, since *Bivens*, *Davis*, and *Carlson*, "we have come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power'"); *Graber*, 59 F.4th at 615 (Hardiman, J., dissenting) (concluding that the separation of powers is "an imperative worthy of immediate enforcement").

Independently, whether special factors bar plaintiff's Eighth Amendment conditions-of-confinement *Bivens* claim also is important enough to merit an interlocutory appeal because allowing her to proceed on that claim risks undermining "the efficiency of government and the initiative of its officials." *Will*, 546 U.S. at 352. Similar to orders denying qualified immunity (which, as noted, are immediately appealable under the collateral order doctrine), orders extending non-statutory *Bivens* remedies impose "time and administrative costs . . . resulting from the discovery and trial process," *Abbasi*, 582 U.S. at 134, and can impair government functioning, interfere with executive autonomy, and chill high-level policy making, *id.* at 141-42. The central role those concerns play in determining whether to extend a new *Bivens* remedy is no less significant and no less worthy of collateral-order review. *See Graber*,

59 F.4th at 616 (Hardiman, J., dissenting) ("Expansion of *Bivens* in violation of the separation of powers thus disrupts effective governance, subjecting officers to the same 'distraction from duty' that qualified immunity is meant to foreclose." (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 881 (1994))). Moreover, as Judge Hardiman recently pointed out in his *Graber* dissent, orders refusing to dismiss *Bivens* claims based on special factors are arguably even more important than other orders that are immediately appealable, including "orders rejecting the applicability of security laws enacted after the initiation of derivative shareholder suits." *Id.* at 612 (citing *Cohen*, 337 U.S. at 546-47).

3. Finally, the district court's refusal to dismiss plaintiff's Eighth Amendment conditions-of-confinement claim satisfies the third *Cohen* factor because defendant's argument that special factors preclude recognizing those remedies would be effectively unreviewable on appeal from final judgment in this action. As noted, "[r]ecognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Egbert*, 142 S. Ct. at 1807 (second alteration in original). These costs arise the moment a federal official is required to respond to a *Bivens* claim, and are not cured by a final judgment in a *Bivens* defendant's favor. *Cf. Forsyth,* 472 U.S. at 526-28 (noting that the same concerns support treating the denial of qualified immunity as an immediately appealable collateral order). The "'time and administrative costs' run up by the discovery and trial process," *Graber*, 59 F.4th at

24

614 (Hardiman, J., dissenting) (quoting *Abbasi*, 582 U.S. at 134), also impose substantial burdens on the courts.

In addition, "recognizing a *Bivens* cause of action is an extraordinary act that places great stress on the separation of powers." *Egbert*, 142 S. Ct. at 1806 n.3 (quotation marks omitted). That stress occurs whenever a district court, particularly in an interlocutory order, extends *Bivens* to a new context. Even a "threatened breach" of the separation of powers warrants "special solicitude" in the form of an immediate appeal. *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982).

Consistent with the above principles, the Supreme Court addressed whether special factors preclude a *Bivens* extension on an interlocutory appeal *without* considering the issue of qualified immunity in *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007), and again in *Hernandez II*, 140 S. Ct. at 740-41. Given the Court's aversion to theories of "pendent appellate jurisdiction," *Swint*, 514 U.S. at 43 (quoting *Swint v. City of Wadley*, 5 F.3d 1435, 1449 (11th Cir. 1993)), the Court is best understood as having considered the remedy-extension orders in *Hernandez II* and *Wilkie* as immediately appealable collateral orders in their own right.

B. This Court has not yet decided whether the collateral order doctrine applies to a district court's decision to extend a non-statutory *Bivens* remedy. Two courts of appeals have held that the collateral order doctrine does not apply in this context. *See*

25

*Himmelreich v. Federal BOP*, 5 F.4th 653 (6th Cir. 2021); *Graber*, 59 F.4th 603.[3] For

multiple reasons—including those explained by Judge Hardiman in his *Graber*

dissent—the reasoning of those decisions is flawed.

In *Himmelreich*, the Sixth Circuit held that an order refusing to dismiss a *Bivens*

claim on special-factors grounds is not an appealable collateral order because *Bivens*

"does not grant [the] defendants an entitlement not to stand trial" and "qualified

immunity more than adequately protects government officials from the burdens of

litigation." 5 F.4th at 662. Both assertions are incorrect. As explained, the *Bivens*

special-factors analysis is grounded in harms that can be avoided only by dismissal at

the earliest appropriate stage of litigation, rather than having to await a trial.

Moreover, the fact that *Bivens* defendants may potentially be entitled to qualified

immunity is not a reason to exclude *Bivens* extension orders from the collateral order

doctrine. Despite the potential for qualified immunity, "[t]he risk of personal damages

liability" and the associated burdens of litigation may "cause an official to second-

guess difficult but necessary decisions." *Abbasi*, 582 U.S. at 142. And the separation-

of-powers "limitation" on recognizing a new *Bivens* claim would likewise be "hollow if

it does nothing but duplicate pre-existing immunity from suit." *United States v. Stanley*,

483 U.S. 669, 686 (1987). *Himmelreich* also stated that, "[t]aken to its logical

conclusion," applying the collateral order doctrine to a *Bivens* extension order "would

---

[3] This question is currently pending before the Tenth Circuit as well. *See Mohamed v. Jones*, No. 22-1453 (10th Cir.).

permit interlocutory appeal of every order denying a motion for summary judgment on a legal issue," 5 F.4th at 662. That statement is unpersuasive. Many other potential legal arguments for why a *Bivens* claim may fail to state a claim, such as the lack of personal jurisdiction or venue, among others, do not raise the separation-of-powers concerns that are implicated by orders extending non-statutory *Bivens* remedies to new contexts. Similarly, such purely legal argument do not raise separation-of-powers concerns in cases that do not involve a court implying a damages remedy to allow a plaintiff to sue a federal officer individually.

Finally, the Sixth Circuit wrongly concluded that the government's position on this issue would contravene *Will*, which held that an order refusing to dismiss a *Bivens* suit based on the FTCA's judgment bar is not an immediately appealable collateral order. *See* 546 U.S. at 355. *Will* is inapposite because the FTCA's judgment bar— unlike the *Bivens* special-factors analysis—is not designed to preserve federal officials' willingness to exercise initiative. *See id.* at 353. Moreover, *Will* recognized that "honoring the separation of powers" is a "value of a high order" that can be "marshaled in support of" an immediately appealable "interest in avoiding trial," *id.* at 352, and, as explained, the *Bivens* special-factors analysis rests on separation-of-powers concerns. *Himmelreich*'s reading of *Will* also cannot be squared with the Supreme Court's decision to address the *Bivens* special-factors issue on interlocutory appeals in *Hernandez II* and *Wilkie*. *See supra* p. 25; *see also Graber*, 59 F. 4th at 612 (Hardiman, J., dissenting).

27

In *Graber*, a divided Third Circuit panel followed *Himmelreich*, *see Graber*, 59

F.4th at 610, with the majority declaring that questions of *Bivens* remedy-availability

merely concern "whether the plaintiff has stated a claim upon which relief may be

granted, which is the type of ruling regularly reviewed after the entry of final

judgment," *id.* at 609 n.11. As Judge Hardiman explained in dissent, however, the

special-factors issue differs from other potential merits defenses because the special-

factors inquiry centers on separation-of-powers concerns. *See id.* at 612-16 (Hardiman,

J., dissenting). That concern "is an imperative worthy of immediate enforcement," *id.*

at 615-16 (citing, *e.g.*, *Sell v. United States*, 539 U.S. 166, 176 (2003)), and "cannot be

undone even if the officer is acquitted," *id.* at 616 (noting that "[e]xpansion of *Bivens*

in violation of the separation of powers . . . disrupts effective governance, subjecting

officers to the same 'distraction from duty' that qualified immunity is meant to

foreclose" (quoting *Digital Equip. Corp.,* 511 U.S. at 881)).

The *Graber* majority also misinterpreted *Will*'s statement that the collateral

order doctrine should not be applicable "'*whenever*'" a *Bivens* defendant loses "'a

motion to dismiss.'" 59 F.4th at 609 (emphasis added) (quoting *Will*, 546 U.S. at 353-

54). As Judge Hardiman correctly explained, *see id.* at 612 (Hardiman, J., dissenting),

neither that statement nor anything else in *Will* supports the majority's conclusion that

"a *Bivens* ruling is different from an immunity ruling and is not eligible for

interlocutory appeal under the collateral order doctrine," *id.* at 609 (majority opinion).

As already noted, giving "*Cohen* treatment" to *Bivens* extension orders, *Will*, 546 U.S. at

352, would not require the same result for all orders declining to dismiss *Bivens* claims on other grounds or other claims on purely legal grounds. And "at most," the statement from *Will* on which the *Graber* majority relied would constitute non-binding "drive-by dictum about *Bivens*." *Graber*, 59 F.4th at 612 (Hardiman, J., dissenting).

The *Graber* majority further erred by refusing to treat *Bivens*-extension orders as immediately appealable because those orders do not involve "an immunity doctrine." 59 F.4th at 609-10. The Sixth Circuit made a similar error in *Himmelreich*. *See* 5 F.4th at 662. As Judge Hardiman explained, "an immunity is neither sufficient nor necessary for an order denying a claim to be 'effectively unreviewable on appeal,'" and "we have recognized collateral orders that do not involve immunity defenses at all, much less immunity from suit." *Graber*, 59 F.4th at 611 (Hardiman, J., dissenting). Courts "do recognize new collateral orders," *id.* at 613, and the Supreme Court did so just last Term in *Shoop v. Twyford*, 142 S. Ct. 2037 (2022), applying *Cohen* collateral order doctrine to prisoner-transport orders. *See id.* at 2043 n.1.

The *Graber* majority also wrongly declined to treat *Bivens*-extension orders as immediately appealable on the ground that the argument that a court should not imply a *Bivens* remedy is "simply a defense to liability." 59 F.4th at 609-10. The *Graber* majority failed to appreciate that qualified immunity also is a defense to liability. Indeed, as noted, a claim of qualified immunity is arguably more clearly a defense to liability than a contention that no cause of action exists, since the latter issue in no way turns on the lawfulness of the challenged conduct.

29

Finally, even though qualified immunity protects government officials from suit and liability unless a plaintiff pleads facts showing that the right was "clearly established," *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)), that is no reason to decline collateral-order review of an order extending *Bivens* to a new context. *Cf. Graber*, 59 F.4th at 609. The judicially created *Bivens* remedy has never extended beyond violations of clearly established rights, and, as noted, the special-factors inquiry furthers the same goal as the clearly-established law requirement, "which is to avoid trial, while also 'honoring the separation of powers,' 'preserving the efficiency of government,' and encouraging 'the initiative of its officials.'" *Id.* (quoting *Will*, 546 U.S. at 352).

## CONCLUSION

For the foregoing reasons, plaintiff's Eighth Amendment conditions-of-confinement claim should be dismissed for lack of an available *Bivens* remedy.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

JASON R. COODY
*United States Attorney*

BARBARA L. HERWIG
 s/ *Laura E. Myron*
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*
*Laura.e.myron@usdoj.gov*

April 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,542 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Laura E. Myron*
LAURA E. MYRON

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2023, I electronically filed the foregoing brief

with the Clerk of the Court for the United States Court of Appeals for the Eleventh

Circuit by using the appellate CM/ECF system.  Service will be accomplished by the

appellate CM/ECF system, except for the following, who will be served via U.S. Mail:

      Rhonda Fleming
      Inmate ID#: 20446-009
      FCI Dublin
      5701 8th Street – Camp Parks
      Dublin, CA 94568

                                        *s/ Laura E. Myron*
                                        LAURA E. MYRON