# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————

RHONDA FLEMING,

Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA, et al.,

Defendants,

FCI TALLAHASSEE WARDEN,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Northern District of Florida

———————————

## REPLY BRIEF FOR APPELLANT
———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

JASON R. COODY
  *United States Attorney*

BARBARA L. HERWIG
LAURA E. MYRON
CASEN B. ROSS
  *Attorneys, Appellate Staff
  Civil Division, Room 7270
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  202.514.1923*

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for defendant-appellant Warden Erica Strong certify that the following have an interest in the outcome of this appeal:

Alston & Byrd LLP*

Boynton, Brian M.

Bromberek, Kristen Kabat*

Coody, Jason R.

Drey, Kathryn Wilburn

Environmental Protection Agency

Federal Bureau of Prisons

Fleming, Rhonda

Frank, Michael J., U.S. Magistrate Judge

Herwig, Barbara L.

Moyle, Marie

Mueller, Andrew J.*

Myron, Laura E.

Peters, Colette S.

Ross, Casen B.*

Stafford, William, U.S. District Court Judge

* Additions to previous certificate marked with an asterisk.

Strong, Erica

United States of America

U.S. Attorney's Office for the Northern District of Florida

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT..............................................1

ARGUMENT ................................................................................................................3

I.     Plaintiff Has No *Bivens* Remedy. ................................................................3

      A.    Plaintiff's Conditions-of-Confinement Claim Presents a New *Bivens* Context. ................................................................................3

      B.    Special Factors Counsel Against Expanding *Bivens* To Plaintiff's Eighth Amendment Claim. ...........................................13

II.    This Court Has Jurisdiction Over This Appeal Pursuant To The Collateral-Order Doctrine. ........................................................................ 15

      A.    The Supreme Court Has Exercised Jurisdiction Over Interlocutory Appeals of Orders Authorizing *Bivens* Remedies. ..............15

      B.    The District Court's Order Satisfies the Three *Cohen* Factors.................21

CONCLUSION ........................................................................................................ 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF CITATIONS**

**Cases:**                                                                                          **Page(s)**

*Adams v. Martinez*,
   No. 22-1425, 2023 WL 5273771 (10th Cir. Aug. 16, 2023) ........................................ 4

*Alvarez v. U.S. Immigration & Customs Enf't*,
   818 F.3d 1194 (11th Cir. 2016) ................................................................. 2, 4

*Anderson v. Creighton*,
   483 U.S. 635 (1987)................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................16

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023) ............................................................................. 22

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ............................................................................. 1, 3

*Bulger v. Hurwitz*,
   62 F.4th 127 (4th Cir. 2023) ................................................................. 11

*Byrd v. Lamb*,
   990 F.3d 879 (5th Cir. 2021) ................................................................. 17

*Cantú v. Moody*,
   933 F.3d 414 (5th Cir. 2019) ................................................................. 7

*Carlson v. Green*,
   446 U.S. 14 (1980) ..................................................................... 1, 4, 5, 15

*Castro v. United States*,
   540 U.S. 375 (2003) ............................................................................. 7

*Cochran v. Penn Mut. Life Ins. Co.*,
   35 F.4th 1310 (11th Cir. 2022) ............................................................. 7

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949).........................................................................21, 24

*Correctional Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ............................................................................. 13

_____

* Authorities upon which we chiefly rely are marked with asterisks.

*Davis v. Passman*,
442 U.S. 228 (1979) ................................................................ 1, 4

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ................................................................ 26

*Dongarra v. Smith*,
27 F.4th 174 (3d Cir. 2022) ..................................................... 8

\* *Egbert v. Boule*,
596 U.S. 482 (2022) ........................... 3, 9, 12, 13, 14, 17, 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................ 24

*Elhady v. Unidentified CBP Agents*,
18 F.4th 880 (6th Cir. 2021) ............................................. 4, 17

*Farmer v. Brennan*,
511 U.S. 825 (1994) ............................................................ 9, 10

*FDIC v. Meyer*,
510 U.S. 471 (1994) ................................................................ 25

\* *Graber v. Doe II*,
59 F.4th 603 (3d Cir. 2023) ...................... 20, 22, 23, 24, 25

*Hartman v. Moore*,
547 U.S. 250 (2006) .......................................................... 16, 17

\* *Hernández v. Mesa*:
580 U.S. 915 (2016) ............................................................ 18
582 U.S. 548 (2017) ............................................. 15, 17-18, 18
140 S. Ct. 735 (2020) ............................... 4, 11, 15, 16, 22

*Himmelreich v. Federal Bureau of Prisons*,
5 F.4th 653 (6th Cir. 2021) .............................................. 20, 25

*Hoffman v. Preston*,
No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022) ......................... 12

*Hudson v. McMillian*,
503 U.S. 1 (1992) ................................................................... 10

*LaBounty v. Coughlin*,
137 F.3d 68 (2d Cir. 1998) .................................................. 11

*Mack v. Yost*,
968 F.3d 311 & n.7 (3d Cir. 2020) .................................................................. 12

*Mammana v. Barben*,
856 F. App'x 411 (3d Cir. 2021) ............................................................. 4-5, 8

*Marquez v. Rodriguez*,
81 F.4th 1027 (9th Cir. 2023) .............................................................. 11, 26

*Mejia v. Miller*,
61 F.4th 663 (9th Cir. 2023) .................................................................. 15

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ........................................................................... 16, 22

*Nestlé USA, Inc. v. Doe*,
141 S. Ct. 1931 (2021) .............................................................................19

*Powell v. Lennon*,
914 F.2d 1459 (11th Cir. 1990) .................................................... 2, 9, 10

*Reid v. United States*,
825 F. App'x 442 (9th Cir. 2020) ............................................................ 5

*Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cty.*,
59 F.4th 1158 (11th Cir. 2023) .............................................................. 12

*Shoop v. Twyford*,
596 U.S. 811 (2022) ............................................................................... 24

*Silva v. United States*,
45 F.4th 1134 (10th Cir. 2022) .............................................................. 11

*SmileDirectClub, LLC v. Battle*,
4 F.4th 1274 (11th Cir. 2021) ...................................................... 21, 23, 24

*Solliday v. Federal Officers*,
413 F. App'x 206 (11th Cir. 2011) ......................................................... 11

*Stack v. Boyle*,
342 U.S. 1 (1951) ................................................................................... 24

*Swain v. Junior*,
961 F.3d 1276 (11th Cir. 2020) ............................................................... 6

*Swint v. Chambers Cty. Comm'n,*
   514 U.S. 35 (1995) ................................................................. 21

* *Tate v. Harmon,*
   54 F.4th 839 (4th Cir. 2022) ...................................... 1, 4, 5, 6, 7, 8, 10

* *Wilkie v. Robbins,*
   551 U.S. 537 (2007) ............................................................ 16, 17, 18

* *Will v. Hallock,*
   546 U.S. 345 (2006) ............................................................ 18, 19, 20, 22

*Williams v. Verna,*
   No. 19-15978, 2023 WL 5221062 (9th Cir. Aug. 15, 2023) ......................................... 4

*Wilson v. Secretary, Fla. Dep't of Corr.,*
   No. 20-13558, 2022 WL 17176707 (11th Cir. Nov. 23, 2022) .................................. 7

*Wilson v. Seiter,*
   501 U.S. 294 (1991) .................................................................10

*Wilson v. Williams,*
   961 F.3d 829 (6th Cir. 2020) .................................................................. 6

*Wood v. Moss,*
   572 U.S. 744 (2014) .................................................................15

* *Ziglar v. Abbasi,*
   582 U.S. 120 (2017) ...................................... 1, 3, 4, 9, 13, 14, 19, 22, 23, 25

**Statutes:**

Prison Litigation Reform Act (PLRA),
   42 U.S.C. § 1997e ............................................................... 13

18 U.S.C. § 3621(b) ............................................................... 14

18 U.S.C. § 4042(a)(2) ............................................................... 14

28 U.S.C. § 1291 ............................................................... 21

28 U.S.C. § 2676 ............................................................... 18

**Regulation:**

28 C.F.R. §§ 542.10-542.19 ................................................................. 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court should have dismissed plaintiff's *Bivens* claim.

This Court should decline to extend *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to plaintiff's conditions-of-confinement claim, alleging an Eighth Amendment violation. That claim meaningfully differs from the three claims in which the Supreme Court has authorized non-statutory, individual-capacity damages awards against a federal official—in *Bivens*, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980)—and multiple special factors counsel against extending *Bivens* here. Plaintiff does not argue otherwise. Instead, plaintiff seeks to cast her claim as one for failure to provide adequate medical care that arises in the same context as *Carlson*.

Plaintiff's allegations demonstrate, however, that she stated a claim for "unconstitutional prison conditions" at FCI Tallahassee. A42 ¶ 42. That is a "systemic claim" that "implicat[es] … ill-defined injuries with ill-defined damages," as opposed to a "narrow and discrete" claim for failure to provide specific medical care that points to prison officials' specific (not programmatic) failures. *Tate v. Harmon*, 54 F.4th 839, 846-47 (4th Cir. 2022). Properly understood, the Court should not extend a *Bivens* remedy to such a conditions-of-confinement claim. *Cf. Ziglar v. Abbasi*, 582 U.S. 120, 137-38 (2017).

Plaintiff's and the district court's reliance on *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990), is misplaced. *See* Resp. Br. 27, 30-31; A87-88. Neither the district court nor this Court in *Powell* undertook the requisite two-step inquiry to determine whether special factors counsel against recognizing a *Bivens* remedy for conditions-of-confinement claims. And because the Supreme Court has recognized a *Bivens* claims in only three contexts, *see Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1205-06 (11th Cir. 2016)—not including for a conditions-of-confinement claim—any *Bivens* holding in *Powell* is no longer good law.

This Court has appellate jurisdiction to review this question now under the collateral-order doctrine. In several cases, the Supreme Court has addressed the propriety of extending *Bivens* to a new context in an interlocutory appeal without also addressing qualified immunity. Those decisions are best understood as having considered the *Bivens*-extension orders in those cases as collateral orders in their own right and thus appealable under the collateral-order doctrine, given that the availability of a cause of action is an antecedent question to whether an official is entitled to qualified immunity. *Bivens*-extension orders also share the same key features that render orders denying qualified immunity immediately appealable. Like qualified immunity, the Supreme Court's special-factors analysis for extending *Bivens* is designed to respect separation of powers and protect an important government interest—ensuring federal officials are not inhibited from carrying out their official duties for fear of individual liability and extensive litigation. *Bivens*-extension orders

are conclusive, separate from the merits, and effectively unreviewable on appeal from a final judgment. And given finite constitutional rights that may be the subject of a *Bivens*-extension order, plaintiff's concern with expanding the collateral-order doctrine is significantly overstated.

## ARGUMENT

### I.      Plaintiff Has No *Bivens* Remedy.

Plaintiff's *Bivens* claim should be dismissed because it arises in a new context and because special factors counsel against extending *Bivens*. A *Bivens* claim arises in a new context if it is "'meaningful[ly]' different" from the three cases in which the Supreme Court has recognized that remedy; and if so, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136, 139 (2017)).

#### A.      Plaintiff's Conditions-of-Confinement Claim Presents a New *Bivens* Context.

Expanding *Bivens* to a new context is a "disfavored judicial activity," *Abbasi*, 582 U.S. at 135 (quotations omitted); *see* Opening Br. 7-11. And the Supreme Court has recognized a *Bivens* action in only three contexts: for a warrantless search and seizure and use of excessive force in a home in violation of the Fourth Amendment, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); for sex

discrimination by a member of Congress in violation of the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and for a failure to provide adequate medical treatment to a prisoner for a life-threatening medical condition in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). The Court's decisions recognizing *Bivens* remedies were "products of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of [a] provision that was allegedly violated." *Hernández v. Mesa* (*Hernández II*), 140 S. Ct. 735, 741 (2020) (quoting *Abbasi*, 582 U.S. at 132). This Court has similarly acknowledged that "the [Supreme] Court has not extended *Bivens* into a new context since 1980." *Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1206 (11th Cir. 2016).

**1.** As explained in the opening brief (at 13-15), conditions-of-confinement claims present a distinctly new *Bivens* context. In *Abbasi* itself, the Supreme Court held that the plaintiffs' claims, "challenging the conditions of confinement" at a federal immigration-detention facility, arose in a new *Bivens* context, and should accordingly be dismissed. 582 U.S. at 137-38. In *Abbasi*'s wake, courts have agreed that a "conditions-of-confinement claim" based on prison conditions in violation of the Eighth Amendment "does indeed arise in a 'new context.'" *Tate v. Harmon*, 54 F.4th 839, 845-46 (4th Cir. 2022); *see also Adams v. Martinez*, No. 22-1425, 2023 WL 5273771, at *2 (10th Cir. Aug. 16, 2023) (unpublished); *Williams v. Verna*, No. 19-15978, 2023 WL 5221062, at *1 (9th Cir. Aug. 15, 2023) (unpublished); *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 886 (6th Cir. 2021); *Mammana v. Barben*, 856 F. App'x 411, 412

n.2, 414 (3d Cir. 2021) (unpublished); *but see Reid v. United States*, 825 F. App'x 442, 444-45 (9th Cir. 2020) (unpublished) (concluding that a conditions-of-confinement claim does not present a new *Bivens* context). Plaintiff does not resist this straightforward understanding of the Supreme Court's *Bivens* jurisprudence.

**2.a.**  Plaintiff instead contends (Resp. Br. 27-31) that she stated a claim for deliberate indifference to serious medical needs that arises in the same context as *Carlson*, 446 U.S. 14, and she argues (Resp. Br. 27) that defendant "attempts to recharacterize" or "reframe" plaintiff's claim as a conditions-of-confinement claim. Plaintiff's allegations belie this contention.

In the operative complaint, plaintiff alleged that she was housed in close proximity to toxic mold, "other toxins," and asbestos, A35 ¶ 2; and that defendant was "deliberately indifferent" to plaintiff's "safety needs" during the COVID-19 pandemic by "housing the Plaintiff in an open dorm, with … unconstitutional prison conditions," A42 ¶ 42; *see also* A42-43 ¶¶ 42, 45 (alleging that inmates could not "socially distance" during the COVID-19 pandemic and that defendant should have sent inmates to home confinement to permit social distancing); A43 ¶ 47 (alleging that inmates slept in "wet beds" and that inmates are "wet and cold" during the winter). As the Fourth Circuit explained in *Tate*, similar allegations of "'cold'" or "'unsanitary'" cells with poor-quality sleeping environments might state a claim for unconstitutional conditions of confinement—not for failure to provide medical care. 54 F.4th at 846.

The *Tate* plaintiff's conditions-of-confinement allegations bear striking similarity to plaintiff's allegations here: plaintiff alleged that he was housed in a "filthy" cell that was "covered with mold," his cell temperatures "could be extraordinarily cold," and "he was given soiled and inadequate bedding." *Tate*, 54 F.4th at 842. Additionally, during the COVID-19 pandemic, many prisoners challenged pandemic-related conditions in various prisons, and this Court and others applied the Supreme Court's familiar rubric for conditions-of-confinement claims. *Swain v. Junior*, 961 F.3d 1276, 1285-91 (11th Cir. 2020); *see also, e.g.*, *Wilson v. Williams*, 961 F.3d 829, 839-44 (6th Cir. 2020).

Plaintiff's requested relief further makes clear that she alleged a conditions-of-confinement claim—she asked that the district court order "[p]rofessional removal of toxic mold, asbestos, and other chemical[s] in the [prison] housing units," declare that the *conditions* at FCI Tallahassee "are unconstitutional," place plaintiff in "home confinement," and "reduc[e] the inmate population at FCI-Tallahassee." A45 ¶¶ 53-55, ¶ 57. Unlike the discrete relief for a claim for failure to provide medical treatment, plaintiff's requested relief would "potentially affect[] not only the scope of [prison officials'] responsibilities and duties but also their administrative and economic decisions." *Tate*, 54 F.4th at 846.

While plaintiff now protests that she, in fact, alleged a claim based on deliberate indifference to serious medical needs, the Court's "focus is on the substance of the complaint, not on the labels the plaintiff chooses to give [her] claims, and not on the

artful way a plaintiff words [her] allegations." *Cochran v. Penn Mut. Life Ins. Co.*, 35 F.4th 1310, 1315 (11th Cir. 2022). Plaintiff correctly notes (Resp. Br. 28) that a *pro se* plaintiff's allegations should be construed liberally, but this Court and the Supreme Court have explained that the substance-versus-labels principle equally applies in such cases. *See, e.g., Castro v. United States*, 540 U.S. 375, 381 (2003); *Wilson v. Secretary, Fla. Dep't of Corr.*, No. 20-13558, 2022 WL 17176707, at *1 (11th Cir. Nov. 23, 2022) (per curiam) (unpublished). And because "[c]ourts do not define a *Bivens* cause of action at the level of '[a constitutional] Amendment' or even at the level of '[a particular] clause,'" *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019), plaintiff cannot frame her prison-conditions-related grievance as leading to an adverse health outcome and simply label it a *Carlson* claim.

Plaintiff attempts to distinguish *Tate*, arguing (Resp. Br. 36) that she alleged "serious health problems" and that her "symptoms worsened by inhaling toxic mold and asbestos for over 2 years," A42 ¶ 44, while the plaintiff in *Tate* "alleged neither serious physical injury nor any particularized damage from the conditions he challenges," 54 F.4th at 846. The Fourth Circuit carefully described the distinction between a *Carlson* claim for failure to provide medical care versus a conditions-of-confinement claim, however. A *Carlson* claim is "narrow and discrete," challenging prison officials' failure "to treat [a particular] condition," leading to specific medical consequences, and implicating "well-established criteria for liability and damages." *Tate*, 54 F.4th at 846-47; *see also id.* at 847 (summarizing the series of events and prison

officials' acute failures to treat particular medical conditions in *Carlson*). A conditions-of-confinement claim, by contrast, is a "broad-based, systemic claim" challenging "a collection of prison conditions," which "vary from cell to cell, from prison to prison, and from time to time" and "implicat[e] a broad class of inmates suffering ill-defined injuries with ill-defined damages." *Id.* at 846-47.

Moreover, the risk that the officers ignored in *Carlson* "in fact resulted" in serious harm to the inmate; a claim based on an alleged "potential harm" that has not necessarily resulted in a serious injury would present a "meaningfully different" *Bivens* context. *Dongarra v. Smith*, 27 F.4th 174, 180-81 (3d Cir. 2022) (distinguishing *Carlson*). Although plaintiff alleged that she was hospitalized to treat COVID-19, A35 ¶ 5; A37 ¶ 17, and was ill with flu-like symptoms, A36 ¶¶ 9, 12, she did not allege any "serious injury" from those maladies. Rather, she broadly alleged that the defendant failed to "protect [her] from present and future serious health problems," A43 ¶ 49, which allegedly "caused … serious damage to [her] future health," A42 ¶ 43; *see also Mammana*, 856 F. App'x at 414 (explaining that "little links *Carlson* to [the plaintiff's conditions-of-confinement] claims beyond federal prison employees and alleged Eighth Amendment violations").

Plaintiff also misreads the district court's opinion by suggesting (Resp. Br. 27) that the court "correctly recognized" that plaintiff's "Eighth Amendment claim, in fact, involved [defendant's] deliberate indifference to [plaintiff's] serious medical needs." To the contrary, the court never referred to plaintiff's *Bivens* claim with any

greater specificity than as an "Eighth Amendment claim." A87-88. At a certain level of abstraction, most claims of deliberate indifference in violation of the Eighth Amendment are likely to encompass some adverse health outcome and a failure to provide medical care—such a constitutional violation must be a "'sufficiently serious'" deprivation, denying "'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). But the Supreme Court has carefully parsed distinctions between various contexts when determining whether to extend a new *Bivens* remedy. A case may arise in a new context even if it has "parallel circumstances" to those in *Bivens*, *Davis*, or *Carlson*. *Egbert*, 596 U.S. at 501 (quoting *Abbasi*, 582 U.S. at 139); *see also* p. 10 below.

**b.** Plaintiff's—and the district court's—reliance on this Court's decision in *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990), is also wide of the mark. *See* Resp. Br. 30-31, 33; A87-88. *Powell* predates—and is no longer good law in light of—two intervening strands of Supreme Court precedent: categorizing Eighth Amendment violations in carceral settings and clarifying what counts as a new *Bivens* context requiring a special-factors analysis.

First, *Powell* came before the Supreme Court delineated different Eighth Amendment violations. The plaintiff there alleged that prison officials had forcibly exposed him to conditions including an "atmosphere … filled with friable asbestos," which allegedly caused him to "suffer[] from respiratory problems" from that exposure. 914 F.2d at 1462-63. Plaintiff seemingly did not allege any particularized

failure by the prison officials to provide specific medical care, nor did plaintiff allege

any other serious medical harm. *Cf. Tate*, 54 F.4th at 846 (noting that the plaintiff's

conditions-of-confinement claim did not allege any "serious physical injury nor any

particularized damage from the conditions he challenges"). This Court interpreted

plaintiff's complaint as "alleg[ing] a violation of the Eighth Amendment through the

defendants' deliberate indifference to the plaintiff's serious medical needs." *Powell*, 914

F.2d at 1463.

That description, however, came before the Supreme Court distinguished

between the various claims of deliberate indifference in violation of the Eighth

Amendment. Several years later in *Farmer v. Brennan*, the Supreme Court laid out types

of claims for Eighth Amendment violations in the prison context, including:

- prison officials' excessive use of force,

- inhumane conditions of confinement,

- inadequate medical care, and

- failure to protect inmates from other prisoners.

511 U.S. at 832-33 (collecting authorities). And in *Hudson v. McMillian*, 503 U.S. 1

(1992), the Court differentiated "Eighth Amendment claims involving medical care"

from "claims about conditions of confinement," explaining that it had "extended the

deliberate indifference standard" from the former to the latter, *id.* at 8 (citing *Wilson v.

Seiter*, 501 U.S. 294, 298 (1991)).

Because *Powell* predated these decisions, this Court did not have the benefit of the Supreme Court's taxonomy of Eighth Amendment violations. But in light of those subsequent Supreme Court decisions, *Powell* is best understood as addressing a conditions-of-confinement claim. *See Solliday v. Federal Officers*, 413 F. App'x 206, 209 (11th Cir. 2011) (per curiam) (unpublished) (citing *Powell* in a conditions-of-confinement case); *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (similar).

Second, *Powell* came before the Supreme Court's unambiguous message that such distinctions are key to evaluating *Bivens* claims, which "may arise in a new context even if … based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández II*, 140 S. Ct. at 743. In that vein, courts have appropriately distinguished between *Bivens* claims alleging various Eighth Amendment violations, and declined to recognize a remedy beyond *Carlson*'s specific context. *See, e.g.*, *Marquez v. Rodriguez*, 81 F.4th 1027, 1029, 1030 (9th Cir. 2023) (holding that the plaintiff's failure-to-protect *Bivens* claim, premised on inmate-inflicted injuries that "lead[] to serious medical complications," was not a claim for failure to provide medical care); *Bulger v. Hurwitz*, 62 F.4th 127, 138 (4th Cir. 2023) (similar, for claim premised on an inmate's death); *Silva v. United States*, 45 F.4th 1134, 1136, 1137 (10th Cir. 2022) (similar, for claim based on officer-imposed injuries).

This Court's brief analysis in *Powell* of the availability of a *Bivens* remedy where a plaintiff alleges not a failure to treat—but rather a failure to mitigate conditions that could cause—a serious medical condition is inconsistent with these intervening

Supreme Court decisions. Plaintiff invokes (Resp. Br. 35) the Court's "prior panel precedent rule," but *Egbert*, *Hernández II*, and *Abbasi* provide a framework for analyzing *Bivens* claims that "'directly conflict[s] with'" the Court's methodology in *Powell*, which never cites *Carlson* or any other relevant Supreme Court *Bivens* decisions. *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cty.*, 59 F.4th 1158, 1164 (11th Cir. 2023). Accordingly, this Court cannot rely on *Powell* "to recognize a *Bivens* remedy" because the Court did not apply the now-familiar two-step framework for *Bivens* cases; *Powell* is thus not "controlling" on that question. *Mack v. Yost*, 968 F.3d 311, 319 & n.7 (3d Cir. 2020); *see also Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) (holding that a prisoner's failure-to-protect claim was a new *Bivens* context and withdrawing the panel's prior opinion following *Egbert*); Opening Br. 12.

Plaintiff attempts (Resp. Br. 33-35) to salvage *Powell*, arguing that "the context, factual background, and holdings in *Abbasi* and *Egbert*" are "markedly different" from those in *Powell*. Plaintiff misunderstands the Supreme Court's modern *Bivens* doctrine and its implications for lower courts' pre-*Abbasi* decisions. Regardless whether the facts in *Abbasi* and *Egbert* differ from those in *Powell*, those Supreme Court decisions (and *Hernández II*) require the Court to first consider whether plaintiff's case meaningfully differs "from the three cases in which the Court has implied a damages action" (*Bivens*, *Davis*, and *Carlson*); and if so, whether "special factors" counsel against "allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quotations omitted).

The district court never conducted this inquiry, relying solely on *Powell*'s superseded analysis. *See* A87-88; *but see* A80-82 (magistrate judge concluding plaintiff's claim presents a new context).

### B. Special Factors Counsel Against Expanding *Bivens* To Plaintiff's Eighth Amendment Claim.

Because this case arises in a new *Bivens* context, the Court should not recognize a cause of action if there is "*any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Abbasi*, 582 U.S. at 136). As discussed (Opening Br. 15-20), multiple special factors counsel against recognizing a *Bivens* claim as a remedy for allegations that prison conditions could prompt medical problems. The Federal Bureau of Prisons' (BOP) administrative remedy program, 28 C.F.R. §§ 542.10-542.19, and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, provide "alternative remedial structure[s]" that are "reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137); *see Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (explaining that BOP's administrative remedy program provides a "means through which allegedly unconstitutional actions and policies can be brought to [BOP's] attention … and prevented from recurring"); *Abbasi*, 582 U.S. at 148-49 (observing that Congress "had specific occasion to consider … the proper way to remedy" matters of prisoner abuse with the PLRA, but declined to provide a "damages remedy

against federal jailers," suggesting that "Congress chose not to extend" *Carlson* to other claims of "prisoner mistreatment").

Even apart from such alternative remedies, recognizing plaintiff's conditions-of-confinement claim could have "systemwide consequences" in federal prison administration that Congress is better situated to weigh, *Egbert*, 596 U.S. at 493 (quotations omitted), when the separation of powers "requires that a branch not impair another in the performance of its constitutional duties," *Abbasi*, 582 U.S. at 141-42 (quotations omitted). Congress has entrusted matters concerning prison-housing decisions to BOP, *see* 18 U.S.C. §§ 3621(b), 4042(a)(2), but plaintiff's claim calls into question BOP's "formulation and implementation" of its inmate-housing policies—as well as prisons' policies for mold abatement, facility maintenance, and mitigating the effects of COVID-19. *Abbasi*, 582 U.S. at 141.

Despite these significant reasons not to expand *Bivens*, plaintiff offers no response. Plaintiff rests (Resp. Br. 31 n.11) on her argument that no special-factors inquiry is required because her "claim did not involve a new *Bivens* context." As explained, pp. 4-5 above, that is incorrect. Indeed, these special factors demonstrate that plaintiff's claim is different from the claim recognized in *Carlson* and highlight that her claim requires extending *Bivens* into a new context. The Court should decline to expand *Bivens* to encompass conditions-of-confinement claims.

## II. This Court Has Jurisdiction Over This Appeal Pursuant To The Collateral-Order Doctrine.

As the opening brief explained (at 21-25), the Supreme Court has declined to extend *Bivens* to new contexts in interlocutory appeals, without discussing qualified immunity. Those decisions demonstrate that a court of appeals may review a *Bivens*-extension order on an interlocutory appeal, alone and apart from an order denying qualified immunity (which is also immediately appealable). Interlocutory orders extending *Bivens* to new contexts resemble qualified-immunity denials in all respects relevant to the collateral-order doctrine, and independently satisfy each of the requirements for obtaining interlocutory review.

### A. The Supreme Court Has Exercised Jurisdiction Over Interlocutory Appeals of Orders Authorizing *Bivens* Remedies.

**1.a.** The Supreme Court has explained that the question whether to recognize a *Bivens* remedy is "'antecedent' to" the question of whether the claim—if recognized—would be barred by qualified immunity. *Hernández v. Mesa* (*Hernández I*), 582 U.S. 548, 553 (2017) (per curiam) (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)); *see also, e.g., Mejia v. Miller*, 61 F.4th 663, 665 (9th Cir. 2023) ("[T]he existence of the cause of action is an antecedent legal question defining the claim."). Indeed, the Court declared it "imprudent" to adjudicate a *Bivens* case without resolving the threshold question of whether to recognize a *Bivens* cause of action. *Hernández II*, 140 S. Ct. at 740 (quoting *Hernández I*, 582 U.S. at 554); *cf. Carlson*, 446 U.S. at 17 n.2 (addressing the availability of a *Bivens* remedy, which was "not [presented] in either the

District Court or the Court of Appeals"); Opening Br. 25. And the Court addressed whether special factors preclude extending *Bivens* in an interlocutory appeal without considering the issue of qualified immunity in *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007), and in *Hernández II*, 140 S. Ct. at 744-49.

The Court also explained in *Wilkie* that the courts of appeals have jurisdiction on an interlocutory appeal to review a district court's "recognition of the entire [*Bivens*] cause of action." 551 U.S. at 549 n.4; *see also Hartman v. Moore*, 547 U.S. 250, 257 n.5 (2006) (defining elements of a *Bivens* cause of action is "properly before [the Court] on interlocutory appeal"). The Court resolved *Wilkie* by concluding the plaintiffs had no *Bivens* remedy, never reaching the issue of qualified immunity. *Wilkie*, 551 U.S. at 549-62. And in *Ashcroft v. Iqbal*, the Court explained that a court of appeals may consider the sufficiency of a plaintiff's pleadings to determine the availability of a *Bivens* cause of action on an interlocutory appeal of a denial of a motion to dismiss. 556 U.S. 662, 672-73 (2009).

The logical implication of the Supreme Court's reasoning is that, just as the courts of appeals have appellate jurisdiction to review the denial of qualified immunity in an interlocutory appeal, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), so too may those courts exercise appellate jurisdiction to consider the antecedent question "whether to devise a new *Bivens* damages action" at all, *Wilkie*, 551 U.S. at 549, even when not presented in conjunction with a qualified-immunity appeal.

Indeed, the Supreme Court has stressed the "'concomitant responsibility'" of promptly resolving the *Bivens*-remedy question, despite arguable forfeiture. *Egbert*, 596 U.S. at 497 n.3. And courts of appeals have *sua sponte* addressed whether to extend *Bivens* when the issue is not properly presented. *See, e.g.*, *Elhady*, 18 F.4th at 884-85 (holding that the plaintiff had no *Bivens* remedy, when the federal defendant had not appealed that question); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (per curiam) (concluding that the court of appeals "must address" the *Bivens* issue, even if not raised in district court).

**b.** Plaintiff resists the Supreme Court's reasoning in *Wilkie* and *Hernández II*, contending (Resp. Br. 21) that "*Wilkie* involved a predicate question of qualified immunity" and that "qualified immunity played a role" in *Hernández II*. Plaintiff's argument (*id.*) that those cases are "irrelevant" misunderstands their import.

Every *Bivens* case will "involve[] a … question of qualified immunity" because every *Bivens* defendant is entitled to a qualified-immunity defense. Indeed, the Supreme Court has reiterated that the availability of a *Bivens* remedy is "directly implicated by the defense of qualified immunity." *Wilkie*, 551 U.S. at 549 n.4 (quoting *Hartman*, 547 U.S. at 257 n.5). The Supreme Court's treatment of the *Bivens* question in *Wilkie* and *Hernández I* and *II* underscores that determining the availability of a *Bivens* cause of action is itself a necessary predicate—or "antecedent"—question to "other questions presented," including qualified immunity. *Hernández I*, 582 U.S. at

553 (quotations omitted). The *Bivens* question should be resolved before resolving those other questions.

And the Supreme Court has suggested that courts can and should first decide whether special factors preclude a *Bivens* remedy—other questions (such as qualified immunity) should be addressed only if the *Bivens* action can itself proceed. In *Wilkie*, the Court held that the plaintiff did not have a *Bivens* cause of action, which obviated the need "to enquire further into … the asserted defense of qualified immunity," 551 U.S. at 562, 567, even though the decision under review only addressed the defendants' entitlement to qualified immunity. And when the Court granted certiorari in *Hernández I*, it ordered the parties to brief the special-factors issue, even though that issue was not presented in the certiorari petition, *see Hernández v. Mesa*, 580 U.S. 915 (2016). No one disputed the Court's jurisdiction over that issue, and it remanded for the lower court to consider special factors. *Hernández I*, 582 U.S. at 553.

**2.** The Supreme Court's analysis in *Will v. Hallock*, 546 U.S. 345 (2006), further underscores that orders recognizing *Bivens* remedies may be immediately appealed under the collateral-order doctrine.

In determining whether an order may be immediately appealed under the collateral-order doctrine, *Will* distinguished between a mere interest in avoiding trial versus avoiding a trial "that would imperil a substantial public interest." 546 U.S. at 353. And the Court explained that the Federal Tort Claims Act (FTCA) judgment bar, 28 U.S.C. § 2676, implicated "no such public interest" because invoking the judgment

18

bar simply concerned an interest in avoiding "litigation for its own sake," as with other rules associated with "avoiding duplicative litigation" (such as res judicata), *Will*, 546 U.S. at 353-54.

A decision recognizing a *Bivens* remedy, however, allows a case to proceed to discovery and trial threatens public interests the Court specifically identified in *Will*: "honoring the separation of powers" and "preserving the efficiency of government and the initiative of its officials." 546 U.S. at 352. The judiciary's decision to recognize any new *Bivens* claim—which Congress has not approved—"is an extraordinary act that places great stress on the separation of powers," *Egbert*, 596 U.S. at 497 n.3 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1938 (2021) (plurality opinion)), which creates a "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," *id.* at 499 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The Supreme Court recognized that these interests would sufficiently establish that an order may be appealed under the collateral-order doctrine. *Will*, 546 U.S. at 352-53; *see Abbasi*, 582 U.S. at 141 (Recognizing a new *Bivens* remedy "might well prevent [federal officials] … from … proper[ly] discharg[ing] … their duties," and would "require courts to interfere in an intrusive way with sensitive functions of the Executive Branch.").[1]

---

[1]     Plaintiff contends (Resp. Br. 15 n.6) that "the purpose of *Bivens* actions" is "to deter individual officers from committing constitutional violations." That contention is irrelevant as to the Court's appellate jurisdiction, even assuming the original

*Continued on next page.*

As with decisions from the Third and Sixth Circuits—holding that *Bivens*-only extension orders do not fall within the collateral-order doctrine, *see Graber v. Doe II*, 59 F.4th 603, 609 (3d Cir. 2023); *Himmelreich v. Federal Bureau of Prisons*, 5 F.4th 653, 663 (6th Cir. 2021)—plaintiff cites (Resp. Br. 16-17, 17 n.7) dicta in *Will*, where the Supreme Court reasoned that various decisions involving government employees would not necessarily touch on public interests to implicate the collateral-order doctrine, including when "a federal officer lost [a motion to dismiss] on a *Bivens* action." 546 U.S. at 353-54. That reasoning was specific to the particular issue presented in *Will*: whether denial of a motion to dismiss based on the FTCA's judgment bar is a collateral final order. *See id.* at 355 (explaining that the judgment bar resembles claim preclusion, which does not "protect values" that must be vindicated with "immediate appeal"). The Supreme Court's dicta refers to motions to dismiss in *Bivens* cases *in general*; it does not specifically address orders newly recognizing a *Bivens* remedy, an act that imperils a "particular value of a high order": "honoring the separation of powers." *Id.* at 352; *see Graber*, 59 F.4th at 612-13 (Hardiman, J., dissenting) (explaining that *Will*'s dicta does not apply to decisions recognizing a *Bivens* remedy, which "imperil[]" different values).

---

rationale for *Bivens* is still good law, *see* Opening Br. 7-11. The collateral-order doctrine provides jurisdiction over this appeal because *Bivens*-extension orders share the same key features that render the collateral-order doctrine applicable to orders denying qualified immunity—protecting the separation of powers and ensuring public officials fulfill their constitutional duties without fear of individual liability.

Plaintiff also implicitly questions the foundations of the collateral-order doctrine, arguing (Resp. Br. 24-25) that federal courts are courts of limited jurisdiction and that permitting interlocutory appeals of *Bivens*-extension orders would itself violate separation of powers. This argument misunderstands both the Supreme Court's aversion to newly recognizing *Bivens* remedies, explained above, pp. 3-5; as well as this Court's description of the collateral-order doctrine, explained further below, pp. 23-24; *see SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1278 (11th Cir. 2021) (en banc) (describing the collateral-order doctrine as a "'practical construction'" of 28 U.S.C. § 1291, requiring a "final decision[]," not a "final judgment").

**B.    The District Court's Order Satisfies the Three *Cohen* Factors.**

As explained (Opening Br. 20-25), the district court's order satisfies each of the three requirements of the *Cohen* collateral-order doctrine: conclusiveness, importance and separateness from the merits, and effective unreviewability after final judgment. *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

**1.**  Plaintiff does not dispute (Resp. Br. 12) that the district court's order satisfies the first two *Cohen* factors because it is "conclusive" and "separate" from the merits. That order is in no respect "tentative, informal[,] or incomplete," *Swint*, 514 U.S. at 42 (quoting *Cohen*, 337 U.S. at 546); and it raises questions distinct from the merits because the Court must decide whether (1) the case differs from the three contexts in which the Supreme Court has recognized *Bivens* claims, and (2) special

factors preclude extending *Bivens*. *See* pp. 3-5, 13-14 above; *see also* Opening Br. 20-24; *Graber*, 59 F.4th at 616-17 (Hardiman, J., dissenting) (addressing the first two *Cohen* factors).

**2.a.** The third *Cohen* factor is also satisfied because extending *Bivens* to a conditions-of-confinement claim would be effectively unreviewable after final judgment. As noted, "honoring the separation of powers" by deferring to Congress's choices regarding the availability of causes of action and "preserving the efficiency of government and the initiative of its officials" are sufficiently important public interests to warrant immediate appeal. *Will*, 546 U.S. at 352. Recognizing a new *Bivens* remedy risks "arrogating legislative power," *Hernández II*, 140 S. Ct. at 741, and "'distract[ing] federal officials] from the energetic performance of [their] constitutional duties,'" *Abbasi*, 582 U.S. at 141. Those interests cannot be vindicated by a final judgment in a *Bivens* defendant's favor. Fully adjudicating a case against a federal official on a cause of action that the judiciary never should have created in the first place irreparably damages those interests, just as a defendant's right to qualified immunity cannot be restored after a trial that should never have occurred. *Mitchell*, 472 U.S. at 526-28; *see also Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (explaining that a court "can do nothing" to retroactively cure harms flowing from a separation-of-powers violation).

Plaintiff suggests (Resp. Br. 20) that "the same separation-of-powers concerns could arguably apply in any circumstance where a court recognized a cause of action not specifically authorized by the legislature." But as Judge Hardiman explained, the

Constitution assures a "*Bivens* defendant's right not to be subject to a claim for which no cause of action lies," based on the values "'embodied in' … the separation of powers." *Graber*, 59 F.4th at 615 & n.2 (Hardiman, J., dissenting). Where Congress has not chosen to subject a federal officer to a trial and liability for money damages for his job-related conduct, the judiciary's wrongful decision to do so stands on different ground than "forcing a *private* litigant to shoulder the burden of a legally unwarranted trial." *Id.* at 615. And *Abbasi* specified that "it is a significant step … for a court to determine that it has the authority … to create and enforce a cause of action for damages *against federal officials* in order to remedy a constitutional violation." 582 U.S. at 133 (emphasis added).

   **b.**  Plaintiff repeats the courts' errors in *Graber* and *Himmelreich* by framing the inquiry under the third *Cohen* factor (*e.g.*, Resp. Br. 15, 17-18, 19) as a dichotomy between whether a defendant "is completely immune" from suit—which plaintiff concedes would satisfy the third *Cohen* factor—versus whether a defendant asserts a defense to liability, which plaintiff purports would not. *Cf.* Opening Br. 28-29. Plaintiff myopically focuses (Resp. Br. 15-16) on one portion of this Court's opinion in *SmileDirectClub*, 4 F.4th at 1280, in which the Court distinguished "a right not to be tried" from "a right whose remedy requires [dismissing claims]." But this Court imposed no such dichotomy, instead relying on Supreme Court precedent to carefully explain that the third *Cohen* factor requires judging "the value of the interests that would be lost through rigorous application of a final judgment requirement," where

the "decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Id.* at 1282.

That consideration supports an immediate appeal here. As Judge Hardiman explained, "an immunity is neither sufficient nor necessary for an order denying a claim to be 'effectively unreviewable on appeal.'" *Graber*, 59 F.4th at 611 (Hardiman, J., dissenting). The relevant question is instead whether the order implicates an important public interest that should be protected by avoiding trial. *SmileDirectClub*, 4 F.4th at 1282. Here, an immediate appeal protects both Congress's prerogatives to enact causes of action and federal officials' abilities to discharge their duties. To the extent plaintiff suggests that only interlocutory appeals couched in terms of "immunity" trigger the collateral-order doctrine, she errs; the Supreme Court has held that even orders having *no* connection to an immunity doctrine are immediately reviewable under the collateral-order doctrine. *See, e.g.*, *Shoop v. Twyford*, 596 U.S. 811, 817 n.1 (2022) (prisoner-transport orders); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170-72 (1974) (orders allocating the costs of providing notice to members of a class action); *Stack v. Boyle*, 342 U.S. 1, 6 (1951) (orders denying motions to reduce bail). *Cohen* itself permitted interlocutory review of certain orders rejecting the applicability of security laws, 337 U.S. at 546-47—orders that implicate less-significant interests than the constitutional separation-of-powers concerns imperiled by the district court's

*Bivens*-extension order here, *see also Graber*, 59 F.4th at 611-12 (Hardiman, J., dissenting) (collecting authorities).

Indeed, in holding that a *Bivens*-extension order could be effectively reviewed following final judgment, *Himmelreich* and *Graber* failed to appropriately weigh the importance of separation-of-powers concerns, much less recognize that "separation-of-powers principles are … central to the analysis" when extending *Bivens* to a new context absent congressional approval. *Abbasi*, 582 U.S. at 135; *see Himmelreich*, 5 F.4th at 661 (assuming that a *Bivens*-extension decision "resolves an important question of the separation of powers"); *Graber*, 59 F.4th at 609 n.11 (noting merely that Judge Hardiman's "observations about separation of powers are well-taken"); *but see id.* at 614-15 (Hardiman, J., dissenting) (recognizing how a *Bivens*-extension order imperils "the Constitution's separation of the legislative and judicial powers").

Moreover, plaintiff's reliance (Resp. Br. 14) on *FDIC v. Meyer*, 510 U.S. 471 (1994), misses the mark. Even if those *Bivens* defendants sought review following a jury verdict, the Supreme Court never indicated that the defendants were *foreclosed* from taking an earlier, interlocutory appeal on the *Bivens* question. The Court expressed no view on the collateral-order doctrine.

**3.** Plaintiff worries (Resp. Br. 22-23, 25) that permitting interlocutory appeal of *Bivens*-extension orders will result in "limitless expansion" of the collateral-order doctrine, with "scores of purported collateral *Bivens* appeals." These concerns are overblown. Allowing immediate appeals of *Bivens*-extension orders would not render

"every pretrial or trial order" in a *Bivens* case immediately appealable. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994).

Plaintiff contends (Resp. Br. 23-24) that exercising appellate jurisdiction here would permit a *Bivens* defendant to immediately appeal challenges to venue or personal jurisdiction. But as explained in the opening brief (at 27), challenges to venue or personal jurisdiction do not implicate the same separation-of-powers concerns as those in an order extending *Bivens* to a new context. Holding that the Court has appellate jurisdiction to review the district court's *Bivens*-extension order would thus not necessarily apply to other *Bivens* cases involving challenges to venue or personal jurisdiction.

Additionally, the Constitution provides a finite number of rights for courts to say merit extending a *Bivens* remedy *vel non*, so courts will (presumably soon) complete the process of determining whether any constitutional rights other than those in *Bivens*, *Davis*, and *Carlson* warrant a damages remedy. Indeed, under modern precedent, "the Supreme Court's stringent test will foreclose relief in all but the most extraordinary cases." *Marquez*, 81 F.4th at 1030; *see also* pp. 11-12 above. Allowing interlocutory appeals of *Bivens*-extension orders would thus not notably expand the collateral-order doctrine, and permitting an interlocutory appeal here should have minimal practical impact on the scope of the collateral-order doctrine. In any event, stand-alone appeals on the *Bivens* question—that is, those that do not also raise qualified immunity—are rare and will not measurably burden the courts of appeals.

## CONCLUSION

For the foregoing reasons, plaintiff's Eighth Amendment conditions-of-confinement claim should be dismissed for lack of an available *Bivens* remedy.

Respectfully submitted,

BRIAN M. BOYNTON
 *Principal Deputy Assistant Attorney
 General*

JASON R. COODY
 *United States Attorney*

BARBARA L. HERWIG
LAURA E. MYRON

 *s/Casen B. Ross*
CASEN B. ROSS
 *Attorneys, Appellate Staff
 Civil Division, Room 7270
 U.S. Department of Justice
 950 Pennsylvania Avenue NW
 Washington, DC 20530
 202.514.1923
 casen.ross@usdoj.gov*

January 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,498 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Casen B. Ross*
CASEN B. ROSS

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system, except for the following, who will be served via U.S. Mail:

Rhonda Fleming
Inmate ID#: 20446-009
FCI Dublin
5701 8th Street – Camp Parks
Dublin, CA 94568

*s/ Casen B. Ross*
CASEN B. ROSS